**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

JEREMY DANIEL IVANOVSKIS,

        Plaintiff,

    v.

FEDERAL BUREAU OF INVESTIGATION,

        Defendant.

Civil Action No. 23-cv-531 (SDJ)

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant the Federal Bureau of Investigation ("FBI") moves for summary judgement pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7. The reasons for this Motion are set forth in the incorporated briefing, as well as the attached declaration of Michael J. Seidel.

## **INTRODUCTION**

Plaintiff Jeremey Daniel Ivanovskis (hereinafter "Plaintiff" or "Ivanovskis") filed this lawsuit pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*., and the Privacy Act, 5 U.S.C. 552a *et seq.*, based on an electronic FOIA request dated November 24, 2021. In response to Plaintiff's request, the FBI processed a total of 179 pages of responsive records subject to FOIA. Of those pages, the FBI released 1 page in full, released 58 pages in part, and withheld 120 pages in full because the pages were exempt in full pursuant to one or more applicable FOIA Exemptions. As set forth in the Declaration of Michael J. Seidel (the "Seidel Declaration"), *attached hereto as* Exhibit "1", the FBI has established that its search was adequate and the withholdings under each of the FOIA exemptions were proper. This case presents no novel

or difficult questions of law. Because the FBI has satisfied its obligations under FOIA, the Court should grant summary judgment in its favor.

## **BACKGROUND**

On November 21, 2021, Plaintiff submitted a FOIA/Privacy Act ("FOIPA request to FBI seeking all records in the FBI's possession, custody, or control, pertaining to the FBI's in-person visit to the Plaintiff's home on September 30, 2021. Seidel Decl. ¶ 6; Ex. A. On November 30, 2021, the FBI acknowledged receipt of Plaintiff's FOIPA request and informed Plaintiff that his request had been assigned FBI FOIPA Request Number 1510657-000. *Id.* ¶ 7. On December 3, 2021, following FBI's denial of Plaintiff's request for expedited processing, Plaintiff submitted a duplicate FOIPA request seeking the same information under "non-urgent" purposes, and expressed a willingness to pay up to $500. *Id.* ¶ 9, Ex. D.

On March 22, 2022, Plaintiff requested an update on the status of his request. *Id.* ¶ 10. The FBI's Public Information Office ("PIO") advised Plaintiff that his request was in the complex request medium processing track and had an estimated completion date of May 2024. *Id.* In response, Plaintiff asked if there was an avenue to obtain recourse if he was dissatisfied with the wait time. *Id.* The PIO advised Plaintiff he could file an appeal or seek dispute resolution services. Seidel Decl. ¶ 10.

On September 23, 2022, Plaintiff submitted an electronic appeal challenging the FBI's denial of expedited processing for FOIA request 1510657-0. *Id.* ¶ 12. On October 12, 2022, the Office of Information Policy ("OIP") informed Plaintiff that it was affirming the FBI's denial of Plaintiff's request for expedited processing and was closing the appeal. *Id.* ¶ 13.

On June 8, 2023, Plaintiff filed his original complaint in this action. ECF No. 1. Plaintiff filed the Amended Complaint on August 2, 2023. ECF No. 8. Although Plaintiff had already filed

this case, the FBI made a release of records to the Plaintiff on September 28, 2023, advising that 178 pages of records had been reviewed, 58 pages of records were being released in full or in part, with certain information exempted pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552a(j)(2), and FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E) 5 U.S.C. §§ 552(b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). *Id.* ¶ 18; Ex. L. On July 9, 2024, the FBI made a supplemental release of records to Plaintiff advising that 1 page of records was reviewed, which was being released in part, with certain information exempted pursuant to FOIA Exemption 6, and 7(C). 5 U.S.C. §§ (b)(6), (b)(7)(C). *Id.* ¶ 19; Ex. M.

## STATEMENT OF THE ISSUES

1.  Whether the FBI performed adequate searches in response to Plaintiff's FOIPA request.

2.  Whether the FBI properly withheld information responsive to Plaintiff's Privacy Act request pursuant to Privacy Act exemption (j)(2).

3.  Whether the FBI properly withheld information pursuant to FOIA exemptions in response to Plaintiff's FOIA request.

4.  Whether the FBI complied with its segregability obligations under FOIA.

## LEGAL STANDARDS

### I.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In the FOIA context, however, the traditional standard is modified because 'the threshold question in any FOIA suit is whether the requester can even see the documents the character of which determines whether they can be released.'" *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010). FOIA requires federal agencies to disclose documents within their control upon request unless the documents fall within an enumerated exemption. *See* 5 U.S.C. § 552(b)(1)-(9). The government bears the burden to prove

Motion for Summary Judgment                                                                 3

that the documents fall within an exemption. *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 141 n.3 (1989); *Batton*, 598 F.3d at 175; *see also* 5 U.S.C. § 552(a)(4)(B) ("[T]he burden is on the agency to sustain its action.").

Generally, the agency satisfies its summary judgment burden by (1) affidavit, *Am. Civ. Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011), and (2) submitting "*Vaughn* indices describing the withheld documents and explaining why the information fell under the claimed exemptions," *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). A *Vaughn* index is a table, common in FOIA cases, that describes withheld documents and explaining why the withheld documents fall within the scope of the claimed FOIA exemption. *Batton*, 598 F.3d at 174. An agency's affidavits "are generally accorded the 'presumption of legitimacy' unless there is evidence that the agency handled the FOIA request in bad faith." *Id.* at 179.

Although FOIA is designed to promote disclosure, it "expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and the policies as the statue's disclosure requirement." *Jobe v. Nat'l Transp. Safety Bd.*, 1 F.4th 396, 402 (5th Cir. 2021) (citing *Food Marketing Inst. V. Argus Leader Media*, --U.S.--, 139 S.Ct. 2356, 2366, 2014 L.Ed.2d 742 (2019) (cleaned up)); *see also FBI v. Abramson*, 456 U.S. 615, 630–31 (1982) ("While Congress established the basic policy of [FOIA] is in favor of disclosure, it recognized the important interests served by the exemptions."). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (citing *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982); *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.,C. Cir. 1979)).

## ARGUMENT

FBI satisfies the summary judgment burden with the attached declaration and *Vaughn*

index justifying the reasonableness of its search and its withholdings pursuant to the Privacy Act exemptions and FOIA exemptions.

## I.    FBI conducted a reasonable search.

The details of the FBI's search are set forth in the Seidel Declaration in Paragraphs 20-29. Seidel Decl. ¶¶ 20-29. Specifically, Mr. Seidel provides an overview of the FBI's Central Records System and the procedures used to search for, review, and process responsive records.

Courts require agencies to conduct searches "reasonably calculated to uncover all relevant documents." *Campbell v. SSA*, 336 F. App'x 477, 480 (3rd Cri. 2011) (quoting *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The Court may grant summary judgment concerning the adequacy of an agency's search for responsive records based on the information provided in "[a] reasonably detailed affidavit, setting for the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby*, 920 F.2d at 68); *see Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C. Cir. 1986). "Such agency affidavits attesting to a reasonable search 'are afforded a presumption of good faith,' and 'can be rebutted only with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't of Justice*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *TransUnion, LLC v. FTC*, 141 F. Supp. 2d 62, 64 (D.D.C. 2001)).

"Adequacy - not perfection - is the standard that FOIA sets," and agencies "need not knock down every search design advanced by every requester." *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015). Conducting a "reasonable" search is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and is "hardly an area in which the courts should attempt to micro manage the executive branch." *Schrecker v.*

*U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quotation omitted).

To that end, in evaluating the adequacy of a search, courts accord agency affidavits a presumption of good faith that cannot be rebutted by speculation "about the existence and discoverability of other documents." *SafeCard Servs.*, *Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation and citation omitted); *see also Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (same). Rather, to establish the sufficiency of its search, the agency's affidavits need only explain the "scope and method of the search" in "reasonable detail." *Kidd v. U.S. Dep't of Justice*, 362 F. Supp. 2d 291, 295 (D.D.C. 2005); *see also*, *Hefferman v. Azar*, 417 F.Supp. 3d 1, 12 (explaining that agency "properly searched the files of all potential custodians who reasonably could have possessed [records]" where agency identified the specific custodians and locations searched and also confirmed why others were not searched.). FOIA does not require agencies to search every record system, but only those systems in which the agency believes responsive records are likely to be located. *W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 9 (D.D.C. 2000), *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001); *Roberts v. U.S. Dep't of Justice*, Civ. A. No. 92-1707 (NHJ), 1995 WL 356320, at *1 (D.D.C. Jan. 29, 1993). As explained below, a reasonable search is precisely what the FBI performed here.

As set forth in the Seidel Declaration, the Record/Information Dissemination Section ("RIDS") conducted a search reasonably calculated to locate records responsive to Plaintiff's request concerning the FBI's in-person visit to his home on September 30, 2021. Given its comprehensive nature and scope, the FBI's Central Records System ("CRS") is the principal records system searched by RIDS to locate information response to FOIPA requests, because CRS is where the FBI indexes information about individuals, organizations, events, and other subjects of investigative interest for future retrieval. Seidel Decl. ¶¶ 21-22. The FBI determined that a

search of CRS represented the most reasonable means for the FBI to locate records potentially responsive to Plaintiff's FOIPA requests because the CRS general indices provide access to a comprehensive, agency-wide set of indexed data on a wide variety of investigative and administrative subjects and consists of millions of searchable records. *Id.* ¶ 27. The FBI searched CRS main and reference entries for the term "Jeremy Ivanovskis." *Id.* ¶ 28. The FBI employed a search cut-off date of November 29, 2021, which is the date of the FBI's initial search for records and is reasonable given the fact Plaintiff's request related to events that took place in September of 2021. The FBI's search was successful, locating 179 pages of responsive documents. *Id.* ¶ 29. The FBI does not have any reason to believe that records responsive to Plaintiff's FOIPA request would reside in any location outside of CRS. *Id.* ¶ 29. Therefore, the FBI has searched all locations reasonably expected to contain records responsive to Plaintiff's FOIPA request and there is no basis for the FBI to conclude that a search elsewhere would be likely to locate additional responsive documents. *Id.*

The Seidel Declaration demonstrates that FBI "made a good faith effort to conduct … search[es] for the requested records, using methods which can be reasonably expected to produce the information requested. *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Here, the FBI searched "all locations and files reasonably likely to contain responsive records." *Huntington v. U.S. Dep't of Commerce*, 234 F. Supp. 3d 94, 103–04 (D.D.C. 2017) (quoting *Bartko v. Dep't of Justice*, 167 F.Supp.3d 55, 64 (D.D.C. 2016)).

Plaintiff cannot overcome the reasonableness of FBI's searches by speculating that there may be other records that the FBI has not produced. *See, e.g., Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010) (affirming district court's determination that search of locations most likely to hold responsive records was reasonable because "the issue is not whether other documents may exist,

but rather whether the search for undisclosed documents was adequate" (quoting *In re Wade*, 969 F.2d 241, 259 n.11 (7th Cir. 1992)). Indeed, "[a]n agency's 'failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist,' . . . 'does not undermine the determination that the agency conducted an adequate search for the requested records.'" *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 143 (D.D.C. 2015) (citation omitted). Here, any assertion by Plaintiff "that various records related to [its] request must have existed is 'simply conjecture' and is 'insufficient to justify a finding that the search was inadequate.'" *Id.* (citation omitted).

Because the FBI has established its search for documents responsive to Plaintiff's FOIPA request was reasonable, the Court should grant summary judgment in favor of the FBI on the issue of the reasonableness of its search.

## II.     The FBI properly withheld information pursuant to Privacy Act exemption (j)(2).

The FBI properly applied Privacy Act exemption (j)(2) to withhold information otherwise responsive to Plaintiff's FOIPA request. In cases such as this, where an individual requests information about himself, the Privacy Act generally provides a right of access to records in government files, unless a Privacy Act exemption applies. *See* 5 U.S.C. 522a. Subsection (j)(2) of the Privacy Act establishes such an exemption. That subjection allows the head of a law enforcement agency to exempt any system of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or apprehend criminals…" 5 U.S.C. § 552a(j)(2). The FBI has exempted law enforcement investigative records maintained in CRS from the Privacy Act's disclosure requirements pursuant to (j)(2). 63 Fed. Reg. 8671, 8684 (Feb. 20, 1998).

In this case, as part of its search for responsive records, the FBI located responsive records, which relate to investigative matters that are part of the FBI's mission. Seidel Decl. ¶ 31. These records were located through a search of CRS, which is a system of records exempted from the Privacy Act. *Id.* The records responsive to the Plaintiff's request were compiled as a result of the FBI's fulfillment of its law enforcement duties. Specifically, the responsive records were compiled in the course of FBI's investigation into information provided by an individual under the implied assurance of confidentiality to the National Threat Operations Center ("NTOC"). The information led to FBI agents going in-person to Jeremy Daniel Ivanovskis' home on September 30, 2021, and the generation of a Guardian report.[1] For these reasons, FBI properly denied Plaintiff's Privacy Act request for these records. *Id.* However, as discussed below, the FBI also reviewed the records pursuant to FOIA in order to achieve maximum disclosure. *Id.*

### III.    The FBI properly withheld information pursuant to FOIA exemptions.

The FBI properly withheld certain information pursuant to FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E) 5 U.S.C. §§ 552(b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Specifically, the FBI's *Vaughn* index, at Exhibit N to the Seidel Declaration, provides for the disposition of each of the 179 withheld pages and Defendant's justification for withholding those pages in whole or in part. Each instance of information withheld pursuant to a FOIA exemption is accompanied by a justification code designation that corresponds to a category of exempted information, which is more fully explained in the Seidel Declaration. Because the Seidel Declaration and *Vaughn* index present legitimate and logical justifications for the challenged withholding, Defendant is entitled

---

[1] No additional information related to the FBI's investigation can be released to Plaintiff. Additional information concerning the FBI's investigation can be provided *in camera* at the request of the Court.

to summary judgment.

### A. Exemption 3: Information Protected by Statute

The FBI properly withheld information under FOIA Exemption 3, which exempts from disclosure "specifically exempted from disclosure by statute … if the statute (A)(i) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). In weighing the validity of this exemption, a court must first consider whether the statute identified by the agency is in fact a withholding statute, and then whether the withheld material satisfies the statute's criteria. *See CIA v. Sims,* 471 U.S. 159, 167 (1985); *Krikorian v. Dep't of State,* 984 F.2d 461, 465 (D.C. Cir. 1993).

In Exemption (b)(3)-5, the FBI withheld information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"). This statue provides that the Director of National Intelligence ("DNI") "shall protect, and shall establish and enforce polices to protect intelligence sources and methods from unauthorized disclosure."[2] On its face, this statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods. Therefore, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute. *See CIA v. Sims*, 471 U.S. 159 (1985).

The DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, and other Presidential Directives, and for access to and dissemination of intelligence. To that end,

---

[2] Section 102A(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 403(i)(1). As a result of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) is now codified at 50 U.S.C. § 3024(i)(1).

the DNI promulgated Intelligence Community Directive 700, which provides that IC elements shall protect "national intelligence and intelligence sources and methods and activities from unauthorized disclosure."[3] The FBI is one of 18-member agencies comprising the IC, and as such, must protect intelligence sources and methods. Seidel Decl.¶ 37.

In light of the plain Congressional mandate to protect the IC's sources and methods of gathering intelligence, the FBI determined that intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiff. *Id.* ¶ 38. Therefore, the FBI is prohibited from disclosing such information under 50 U.S.C. § 3024(i)(l).[4] The Seidel Declaration and *Vaughn* index suffice to establish intelligence sources and methods would be revealed with disclosure. *See Am. Ass'n of Women, Inc. v. U.S. Dep't of Just.*, 167 F. Supp. 3d 143 (D.D.C. 2016) (approving withholding under Exemption 2, of "information relating to intelligence sources and methods" without further describing the records); *Webster v. U.S. Dep't of Just.*, No. CV 02-603 (RC), 2020 WL 1536303, at *5 (D.D.C. Mar. 31, 2020) (finding the government's declaration stating that "'the FBI's intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiffs … adequately assert[ed] that the information withheld qualifies under Exemption 3"). Here, as in *American Association of Women* and *Webster*, Defendant satisfies its summary judgment burden to establish that they properly invoked Exemption 2 as to intelligence sources and methods.

## B.  Exemptions 6 and 7(c): Unwarranted Invasion of Personal Privacy

Defendant's invocation of Exemptions 6 and 7(C) are also justified and supported by

---

[3] Intelligence Community Directive 700, dated June 7, 2012, at ¶ E.2.a.
[4] Although 50 U.S.C. § 3024(i)(1) does not impose a requirement to articulate harm, disclosure of this information presents a real opportunity for individuals to develop and implement countermeasures, resulting in the loss of significant intelligence information, sources, and methods relied upon by national policymakers and the IC to safeguard national security.

summary judgment evidence. Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption 6. *Cook v. Nat'l Archives & Records Admin*., 758 F.3d 168, 175 (2d Cir. 2014) (citing *U. S. Dep't of State v. Washington Post Co*., 456 U.S. 595, 599–602 (1982)). Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[8] In asserting these exemptions, Defendant weighed each impacted individual's privacy interest against the public's interest in disclosure. Seidel Decl. ¶¶ 42-43; *see also Dillon v. U.S. Dep't of Just*., 444 F. Supp. 3d 67, 94 (D.D.C. 2020) ("Both Exemption 6 and Exemption 7(C) require agencies and reviewing courts to 'balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information.'"). Where, as here, the records at issue relate to law enforcement files, individual privacy interests are heightened because the very "mention of an individual's name . . . will engender comment and speculation and carries a stigmatizing connotation." *Id.*

In this case, in each instance where information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure. Seidel Decl. ¶ 42. The FBI also complied with its policies for determining whether the privacy concerns were obviated by the death of the individual. *Id.* ¶ 43.

### i. (b)(6)-1 & (b)(7)(C)-1: Names and Other Identifying Information of FBI Special Agents and Professional Staff

The FBI appropriately withheld the names and identifying information of FBI Special Agents ("SAs") and professional staff. The FBI SAs and professional staff were responsible for

conducting, supervising, and maintaining the investigative activities related to the FBI SAs in-person visit to Jeremy Daniel Ivanovskis' home on September 30, 2021, as reflected in the documents responsive to Plaintiff's request. Seidel Decl. ¶ 44. The Seidel Declaration explains that disclosure of information withheld pursuant to these exemptions would constitute an unwarranted invasion of personal privacy, especially in light of the non-existent public interest. *Id.* ¶¶ 45-46. Thus, the Seidel Declaration and index justifies these redactions and withholdings. *See Am. Ass'n of Women,* 167 F. Supp. 3d at 143.

### ii. (b)(6)-2 & (b)(7)(C)-2: Names and Other Identifying Information of Third Parties Who Provided Information

In Exemption category (b)(6)-4 and (b)(7)(C)-4, the FBI withheld the names and identifying information of third-party individuals who provided information to the NTOC, which prompted the FBI to open an assessment and led to FBI agents' in-person visit to Plaintiff's home on September 30, 2021. The identifying information of, and information provided by, this third-party individual appears within the FBI's files because the individual willingly divulged information relevant to FBI investigative efforts. This individual was not of investigative interest to the FBI. Plaintiff has not provided a privacy waiver from the third-party authorizing release of his or her information, nor has Plaintiff supplied proof of death; therefore, this individual maintains substantial and legitimate privacy interests in not having cooperation or connection to FBI law enforcement matters disclosed. Seidel Decl. ¶ 47. The Seidel Declaration and index justify these withholdings. *See Am. Ass'n of Women, Inc.*, 167 F.Supp. 3d at 143.

### iii. (b)(6)-3 & (b)(7)(C)-3: Names and Other Identifying Information of Third Parties Merely Mentioned

In Exemption (b)(6)-3 and (b)(7)(C)-3, the FBI withheld the names and identifying information of third parties who were merely mentioned in the investigative records responsive to

Plaintiff's FOIPA request. Seidel Decl. ¶ 50. These individuals were not of investigative interest to the FBI, but were tangentially mentioned in conjunction with FBI database inquiries related to the information provided to the NTOC. *Id.* The redaction of the names and identifying information of these third-parties was proper. *See Dillon*, 444 F.Supp.3d at 96 (FBI properly redacted identifying information of third parties merely mentioned who are "not of investigative interest to the FBI;" rather, they were "private citizens" who "were at one time connected with an FBI investigation"); *Am. Ass'n of Women*, 167 F.Supp.3d at 143 ("defendant has properly claimed both exemptions from disclosure as the responsive records included personal information of FBI Special Agents and support personnel, third-parties of 'investigative interest,' non-FBI federal government personnel, third-parties 'merely mentioned,' state and local law enforcement personnel, and third-parties who provided information to the FBI.").

### iv. (b)(6)-4 & (b)(7)(C)-4: Names and Other Identifying Information of Third Parties of Investigative Interest

In Exemption category (b)(6)-4 & (b)(7)(C)-4, the FBI withheld the name and identifying information of a third party who was of investigative interest to the FBI. Being identified as a subject of FBI interest carries a strong negative connotation and a stigma, whether or not the individual actually ever committed a criminal act. Release of the identity of the individual to the public could subject them to harassment, embarrassment, undue public attention, or professional or social repercussions. Seidel Decl. ¶ 51. The Seidel Declaration and index justify these redactions. *See Am. Ass'n of Women, Inc.*, 167 F.Supp.3d at 143.

### v. (b)(6)-6 & (b)(7)(C)-6: Names and Other Identifying Information of Local Law Enforcement Personnel

In Exemption category (b)(6)-6 and (b)(7)(C)-6, the FBI withheld the names and identifying information of local law enforcement employees, who were acting in their official

capacities and aided the FBI in the law enforcement investigative activities reflected in the records responsive to Plaintiff's requests. Seidel Decl. ¶ 52. The rationale for protecting the identities of FBI SAs and professional staff discussed *supra* similarly supports protecting the names and identifying information of these local law enforcement employees. *Id.* The Seidel Declaration and index justify these redactions. *See Am. Ass'n of Women, Inc.*, 167 F.Supp.3d at 143.

## C. Exemption 7(D): Confidential Source Information

Defendant is also justified in its application of Exemption 7(D). Exemption 7(D) exempts records or information compiled for law enforcement purposes when disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). "Under 7(D), the government has clear statutory authority to withhold both the source and the information with respect to criminal investigations . . . ." *Cooper Cameron Corp. v. U.S. Dep't of Lab.*, 280 F.3d 539, 550 (5th Cir. 2002). What constitutes a "confidential" source has been interpreted broadly. The requirement signifies only that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others. *See Dow Jones & Co. v. Dep't of Just.*, 917 F.2d 571, 575–76 (D.C. Cir. 1990).

Numerous confidential sources report to the FBI on a regular basis; they provide information under express assurances of confidentiality and are "informants" within the common meaning of the term. Seidel Decl. ¶ 54. Others are interviewed and/or provide information under implied assurances of confidentiality (*i.e.*, under circumstances from which assurances of confidentiality may be inferred). In either situation, these sources are considered

Motion for Summary Judgment

confidential because they furnish information only with the understanding that their identities and the information they provided will not be divulged outside the FBI. *Id.* Information provided by these sources is singular in nature, and if released, could reveal their identities.

The release of a source's identity would forever eliminate that source as a future means of obtaining information. *Id.* ¶ 55. In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources. *Id.* Such a result undermines one of the FBI's most important means of collecting information and could thereby severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of federal criminal laws. *Id.*

Here, the FBI applied Exemption 7(D) redaction to a particular sub-category of information—(b)(7)(D)-4: Names, Identifying Information of, and Information Provided by Individuals Under Implied Assurances of Confidentiality. Within this Exemption category, Defendant protected the names, identifying information of, and information provided by third parties under circumstances in which confidentiality can be inferred. Here, the FBI considered multiple factors in reaching a conclusion that individual provided information under an implied assurance of confidentiality. These factors included: 1) the singularity of the information provided and the likelihood these individuals could be identified through release of this information by those familiar with the events described; 2) the proximity of these sources to the investigative subjects and events they described; and 3) and the nature of the information they described. Seidel Decl. ¶ 56. The FBI also recognizes that persons who submit tips to the NTOC and other information to FBI via interviews or written statements would be reluctant to do so if they believed their identities would be revealed. *Id.* Here, plaintiff has requested the identity of the person who reported him. Revealing the identity of that source could put him in danger of

reprisal. Taken together, these factors support the FBI's conclusion that the individual who provided information to the FBI did so only because they believed their identity and the information they provided would remain confidential. *Id.* The FBI's application of this Exemption category is supported by the summary judgment evidence, and it is entitled to summary judgment on this exemption.

### D. Exemption 7(E): Law Enforcement Techniques and Procedures

FOIA Exemption (b)(7)(E) provides protection for:

> law enforcement records [which]…would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). The FBI asserted Exemption (b)(7)(E) to withhold information from these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law. Seidel Decl. ¶ 59.

### i. (b)(7)(E)-1: Sensitive Investigative File Numbers

In Exemption category (b)(7)(E)-1, the FBI protected sensitive investigative file numbers. Seidel Decl. ¶ 60. These numbers are not known to the general public. The file numbering system consists of three components. The first component indicates the type of investigative/intelligence gathering programs to which the files pertain. *Id.* Because many of the FBI's classification numbers are public, disclosure of the investigative file numbers in this case would reveal the types of investigations being pursued and consequently the type of investigative techniques and procedures available to FBI investigators, and/or non-public aspects of the FBI's investigative strategies. *Id.* Such a release would also reveal critical information about non-public investigative

techniques and procedures, which would allow criminals and foreign adversaries to discern the types of sensitive investigative strategies the FBI is pursuing whenever such classification numbers are present within these or other sensitive FBI records. *Id.* For these reasons, the FBI properly withheld this information. *See e.g. Kuntz v. Dep't of Justice*, 1:19-cv-70, 2020 WL 6324343, *11 (D.N.D. Aug. 14, 2020) (finding the FBI properly withheld "Sensitive File Numbers" pursuant to Exemption (b)(7)(E)).

### ii. (b)(7)(E)-2: Identity of FBI Squad and Operational Division

In Exemption category (b)(7)(E)-2, the FBI protected methods and techniques involving the identity of the FBI squad and operational division involved in the investigation related to the FBI agents' in-person visit to Plaintiff's home on September 30, 2021. Seidel Decl. ¶ 64. Disclosure of the squad and division conducting the investigation would reveal the type of persons of investigative interest, the physical areas of interest of the investigation, and taken together with other locations could establish a pattern that identification of a single location would not. *Id.* If the locations are clustered in a particular area, it could allow a person of interest to avoid those locations. *Id.* The information could also allow subjects to employ countermeasures aimed at concealing a particular type of behavior or to avoid a particular location *Id.* Additionally, because some squads are highly specialized and are involved in deploying particular investigative techniques, disclosure of their involvement would reveal non-public details concerning which investigative techniques were being deployed and allow criminals to predict the FBI's use of these techniques in similar investigative circumstances. For these reasons, the FBI properly protected this information pursuant to FOIA Exemption (b)(7)(E). *See e.g. Buckley v. U.S. Dep't of Justice*, 19-cv-319F; 2021 WL 5371463 (W.D.N.Y. Nov. 18, 2021) (finding the FBI properly withheld information relating to the identity of FBI units, squads, and divisions pursuant to FOIA

Exemption 7(E)).

### iii.  (b)(7)(E)-3: Non-Public Telephone Numbers of FBI Personnel

In Exemption category (b)(7)(E)-3, the FBI withheld the non-public telephone numbers of FBI personnel. Seidel Decl. ¶ 66. Releasing this information would provide subjects who were of investigative interest to the FBI with specific targets for attacks on FBI communications through "spoofing" or other illegal means.[5] *Id.* ¶ 66. Releasing this information poses substantial risks to the FBI's effectiveness and could enable criminals to circumvent the law. *Id.* Thus, the FBI properly withheld this information. *See Light v. Dep't of Just.*, 968 F.Supp.2d 11, 29 (D.D.C. 2013) (withholding "internal nonpublic telephone numbers and web site addresses used frequently by [FBI] personnel to exchange investigative information"); *Ortiz v. United States Dep't of Justice*, 67 F.Supp.3d 109, 123 (D.D.C. 2014) (agency telephone numbers assigned to DEA employees were properly withheld under Exemption 7(E) because their release to the public "could enable violators to identify law enforcement personnel, disrupt official DEA businesses, subject DEA employees to harassing phone calls).

### iv.  (b)(7)(E)-4: Collection and Analysis of Information

In Exemption (b)(7)(E)-4, the FBI withheld the methods the FBI uses to collect and analyze information it obtains for investigative purposes, including internal FOIA processing documents. Seidel Decl. ¶ 67. Release of this information could inadvertently disclose sensitive law enforcement techniques and procedures through the information these documents contain and what

---

[5] As recently as June 3, 2021, DOJ's Executive Office for Immigration Review ("EOIR") announced it was notified of phone calls that spoofed the Office of the Chief Immigration Judge as part of a misinformation campaign. Callers spoofed the Office of the Chief Immigration Judge's main line so that calls would appear to be coming from EOIR on the recipient's caller ID. The caller then posed as an EOIR employee and sought personal information from the victims. *See*: https://www.justice.gov/eoir/pr/eoir-warns-scammers-spoofing-agency-phone-number, last accessed June. 13, 2024.

they do not contain. *Id.* Release of this sort of information could allow subjects who were of investigative interest to the FBI to educate themselves about the techniques employed for the collection and analysis of information and thereby allow those individuals to take countermeasures to circumvent the effectiveness of the techniques, which would, in turn, allow them to continue to violate the law and engage in intelligence, terrorist, and criminal activities. For these reasons, the FBI has properly withheld this information pursuant to FOIA Exemption 7(E).

### v.  (b)(7)(E)-7: Database Identifiers and Print Outs

In Exemption category (b)(7)(E)-7, the FBI protected the identities of sensitive investigative databases and database print outs located through queries of these non-public databases used for official law enforcement purposes by the FBI. Seidel Decl. ¶ 68. Releasing the identities of these databases would give criminals insight into the available tools and resources the FBI uses to conduct criminal and national security investigations (*i.e.*, the scope of information stored within the databases, how the FBI uses the databases to support its investigations, the types of information most valued by the FBI for particular investigations, and vulnerabilities of the databases). *Id.* The FBI's withholding of this information is proper under Exemption 7(E). *See Callimachi v. Fed. Bureau of Investigation*, 583 F. Supp. 3d 70, 91 (D.D.C. 2022) ("[D]isclosure of the databases' identities tells criminals which database the Bureau relies on. Cyber criminals seeking to cripple the FBI's capabilities might then know to target those databases."); *New York Times Co. v. U.S. Dep't of Just.*, No. 16 CIV. 6120 (RMB), 2017 WL 4712636, at *27 (S.D.N.Y. Sept. 29, 2017) (FBI properly applied Exemption 7(E) to database identities because "disclosure of database identities and search results would reveal how the FBI investigates suspected [criminals]").

IV.    **Consultations with Other Government Agencies**

The FBI consulted with the United States Customs and Border Protection ("CBP")in making disclosure determinations, as permitted and required by statute. Seidel Decl. ¶ 75. These types of referrals occur often and are contemplated by the FOIA statue. 5 U.S.C. § 552(a)(6)(iii)(III) (permitting consultation "with another agency having a substantial interest in the determination of the request"). CBP is not a party to this litigation, but submitted a declaration supporting withholding pursuant to FOIA Exemptions 6, 7(C), and 7(E). *Id.*; Ex. O, Decl. of Patrick Howard.

V.    **Segregability**

Finally, the FBI has satisfied its segregability obligations under FOIA. For purposes of segregability, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Here, Defendant processed all records responsive to Plaintiff's requests to achieve maximum disclosure consistent with the access provisions of the FOIA. Seidel Dec. ¶ 74. Every effort was made to provide Plaintiff with all information in the public domain and with all reasonably segregable, non-exempt information. The FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiff.

## **CONCLUSION**

Defendant has presented a declaration, a *Vaughn* index, and legal authority sufficient to logically and plausibly support its invocation of the challenged exemptions and satisfy its FOIA and summary judgment burden. For the reasons stated above and attached, Defendant respectfully requests that this Honorable Court grant summary judgment in its favor.

Respectfully submitted,

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

*/s/ James Gillingham*
JAMES GILLINGHAM
Assistant United States Attorney
Texas Bar No. 24065295
110 N. College Ave.; Suite 700
Tyler, Texas 75702
Tel:  (903) 590-1400
Fax: (903) 590-1436
Email:  James.Gillingham@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2024, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to all counsel of record via the court's electronic filing system.

*/s/ James Gillingham*
JAMES GILLINGHAM
Assistant United States Attorney