## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

JEREMY DANIEL IVANOVSKIS,

               Plaintiff,

      v.                                  Civil Action No. 23-cv-531 (SDJ)

FEDERAL BUREAU OF INVESTIGATION,

               Defendant.

## DEFENDANT'S REPLY TO PLAINTIFF'S AMENDED RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

        Defendant the Federal Bureau of Investigation ("FBI") replies to Plaintiff's Response in Opposition to the FBI's Motion for Summary Judgment and opposes Plaintiff's Cross-Motion for Summary Judgment (ECF No. 25).

## INTRODUCTION

        This case arises out of a FOIA/Privacy Act ("FOIPA") request Plaintiff Jeremy Ivanovskis (hereinafter "Plaintiff" or "Ivanovskis") made to the FBI on November 21, 2021, before he ever filed paperwork to run for office. In that request, Plaintiff sought all records in the FBI's possession, custody, or control, pertaining to the FBI's in-person visit to the Plaintiff's home on September 30, 2021. Plaintiff later clarified and narrowed his request. He stated, "[m]y request is very simple, all I need is the reason why FBI attempted an in-person contact at my residence on 9/30/2021." ECF No. 22-1, p. 59. Plaintiff further clarified that:

> All I am requesting is the identity of the reporting party or the complainant, and the nature of the accusation as to why Frisco, Texas field agents of the Dallas FBI attempted to contact me at my residence approximately two months prior to filing to run for U.S. Congress. This isn't complicated.

ECF No. 22-1, p. 64.

On September 28, 2023, the FBI made a release of records to Plaintiff, advising that 178 pages of records were reviewed, and 58 pages of records were being released in full or in part, with certain information exempted. ECF No. 22-1, p. 1, ¶ 18. On July 9, 2024, the FBI made a supplemental release of records advising that one page of records was reviewed, and one page of records was released in part, with certain information exempted. *Id.* at 7, ¶ 19.

On July 17, 2024, the FBI filed its Motion for Summary (the "Motion"), showing its searches for records responsive to Plaintiff's FOIPA request were reasonable, its withholdings under each of the FOIA exemptions were proper, and it complied with its segregability obligations by producing the most information possible.[1] *See generally* ECF No. 22. Plaintiff's Response/Cross Motion for Summary Judgment (the "Response") is based on a misunderstanding of FOIA and a misinterpretation of opinions in cases on which Plaintiff primarily relies: *Jett v. FBI*, Civ. No. 1:14-cv-00276 (D.D.C.) and *Huddleston v. FBI*, 4:20-cv-00447 (E.D. Tex.). Properly interpreted, these cases support FBI's motion for summary judgment. Defendant stands behind the briefing, the First Seidel Declaration, and *Vaughn* Index as accurate and justifying summary judgment in favor of the FBI. In this Reply, the FBI offers the Second Declaration of

---

[1] When an individual requests records about himself or herself, the FBI first considers the request under the Privacy Act, which generally provides a right of access to records about them maintained in government files, unless a Privacy Act exemption applies. ECF No. 22-1, p. 12, ¶ 30. In this case, the FBI exempted law enforcement investigative records maintained in the CRS from the Privacy Act's disclosure requirements pursuant to (j)(2). *Id.* (citing 63 Fed. Reg. 8671, 8684) (Feb. 20, 1998). Although access to records responsive to Plaintiff's request was denied under the Privacy Act, the FBI has reviewed the records under the access provisions of FOIA to achieve maximum disclosure. *Id.* ¶ 31.

Michael Seidel ("Second Seidel Declaration") *attached hereto as* Exhibit "A," in order to clarify some issues raised in Plaintiff's response. The Motion, the Seidel Declarations, and this Reply establish that Defendant is entitled to summary judgment on all issues before the Court.

## ARGUMENT

The FBI has established its entitlement to summary judgment on the adequacy of its search, withholdings, and segregability obligations. Although FOIA strongly favors disclosure, "FOIA expressly recognizes that important interests are served by its exemptions and those exemptions are a much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Jobe v. Nat'l Transp. Safety Bd.*, 1 F.4th 396, 402 (5th Cir. 2021). Here, the FBI conducted a search reasonably calculated to uncover all responsive documents, *Campbell v. SSA*, 336 F. App's 447, 480 (3rd Cir. 2011), and properly withheld documents, in whole or in part, based on applicable FOIA exemptions. The FBI also complied with its segregability obligations by making partial disclosure of documents where, due to appliable FOIA exemptions, a full disclosure was not possible. The Plaintiff has failed to establish any bad faith on behalf of the FBI and therefore discovery is neither necessary, nor appropriate, especially when it is clear that Plaintiff is not interested in discovery regarding the FBI's search for documents, indexing, and classification procedures, but instead wants to ask an FBI agent "why he visited Plaintiff's home on September 30, 2021." ECF No. 25, p. 44, ¶ 103. The purpose of the FOIA is not to answer Plaintiff's questions and his request for discovery should be denied.[2]

---

[2] *See e.g.s. Jud. Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 456 (D.D.C. 2016) (finding that "[a] question is not a request for records under FOIA and an agency has no duty to answer a question posed as a FOIA request."), *aff'd on other grounds*, 681 F. App'x 2 (D.C. Cir. 2017); Jean-Pierre v. BOP, 880 F. Supp. 2d 95, 103 (D.D.C. 2012) (concluding that request for objective pieces of information, such as "who gave the order" and "on what day," are not "cognizable under FOIA, because they ask questions calling for specific pieces of information rather than records").

I.        <u>**The FBI's search was reasonable.**</u>

The FBI's search, as set forth in the Seidel Declarations, was reasonable to search for records responsive to Plaintiff's FOIPA request. In the Response, Plaintiff argues that the FBI failed to conduct an appropriate search. Plaintiff's opposition to the FBI's motion for summary judgment is primarily based on the FBI only searching the CRS database and using Plaintiff's name as the search term. Plaintiff suggests the FBI's search was not sufficient because it did not search other databases including ELSUR, TSDB, Fog Reveal, and FIDS. ECF No. 20, p. 11, ¶ 28. Plaintiff is wrong. The FBI's decision to search CRS using Plaintiff's name as a search term was reasonably calculated to uncover all responsive documents.

First, the FBI's decision to limit its search to Plaintiff's name was reasonably calculated to uncover all responsive documents. As explained in the Second Seidel Declaration, the FBI typically extracts search terms from the four corners of the request, based on information provided by the requestor. Second Seidel Decl. ¶ 14. The most appropriate term derived from Plaintiff's request was his name. The other terms Plaintiff suggests in the Response, such as "the confidential informant name," "Agent Hightower's office location," "names of other agents who visited Plaintiff's home," and/or "Plaintiff's driver's license," are vaguely described and lacking specific descriptors that would allow the FBI to conduct a reasonable search for records. Further, these additional terms were not provided at the time Plaintiff submitted his FOIA request. *Id*. Additionally, the structure of CRS is not conducive to searching in the manner Plaintiff suggests in the Response. *Id.* ¶ 15. This is not surprising. Although Plaintiff claims to have "spent time learning about the FBI's information systems and databases, which [he] know[s] include: ELSUR, TSDB, Fog Reveal, and FIDS, and others," Plaintiff does not claim to have any firsthand knowledge of these systems, any experience with these systems, or any experience searching these

systems. *See* Ivanovskis Decl. ¶ 42.  Ultimately, the only reasonably described search term in Plaintiff's request was his name, which the FBI searched and believed was the term most likely to locate records responsive to Plaintiff's FOIPA request.

Plaintiff's argument that the FBI acted unreasonably by limiting its search terms to his name is largely based on *Jett v. FBI*, 139 F.Supp.3d 353 (D.D.C. 2015). But an appropriate reading if *Jett* actually supports the reasonableness of the FBI's decision and its right to summary judgment on this issue of search.

In *Jett*, the court considered the FBI's response to Plaintiff's FOIA request seeking records pertaining to the FBI's investigation of his opponents in a race to represent the 3rd Congressional District of Florida in the United States Congress. *Jett*, 139 F.Supp.3d at 356–58. In the FOIA request, Plaintiff stated:

> My name is 'James B. Jett' and I am requesting 'any' information you have available on an investigation originating within the Jacksonville Field Office regarding an incident involving [the Intermediaries], [the Opponent] and [the high-ranking House of Representatives Member].

*Id.* at 358. The Plaintiff further specified he sought:

> FBI investigative reports, copies of telephonic tape recordings made from my personal telephone at the request of the FBI, interview reports of individuals involved, follow-up investigative reports by any FBI agents and/or written transcriptions of 'any' recorded conversations between myself and the suspects involved in this case.

*Id.* The FBI searched for records by searching the CRS database, through ACS, using a three-way phonetic breakdown of James B. Jett, to include the variation 'James Jett.' *Id.* at 365. In finding that the FBI's search was inadequate, the Court addressed the FBI's search terms and the failure to search the ELSUR database. Regarding search terms, the FBI refused to search the names of Plaintiff's Opponent, the Intermediaries, and the high-ranking member of the House, despite the fact those individuals had all been identified in Plaintiff's request because Plaintiff did not provide

Privacy Act waivers for those individuals. *Id.* at 365–66. The court distinguished the requirement to search for documents and the requirement to ultimately produce those documents, concluding that the FBI could not "invoke the Privacy Act to justify a blanket refusal to use relevant names as search terms to locate documents responsive to Jett's request." *Jett*, 139 F.Supp.3d at 367. The Court also found that FBI should have searched the Electronic Surveillance Indices ("ELSUR") databases, which the court explained was a record-keeping system separate from CRS that FBI used to hold records pertaining to FBI's use of electronic or telephone recordings. *Id.* at 367. The court found the FBI should have searched ELSUR because the Plaintiff's FOIA request specifically asked for copies of telephonic tape recordings made from his personal telephone at the request of the FBI. *Id.* Due to the FBI's failure to search ELSUR, the court found it failed to carry its burden of showing it made a good faith effort to conduct a search for the requested records, using methods which could reasonably be expected to produce the responsive information. *Id.*

*Jett* is distinguishable from this case and the distinctions support the reasonableness of the FBI's search in this case. First, unlike *Jett*, where the FOIA request identified multiple individuals by name, Plaintiff's request in this case in this case only documents relating to the FBI's "in-person visit to [Ivanovskis's] place of residence by FBI Special Agent Hightower, and all others, on the Frisco or Dallas, Texas, FBI Field offices, on September 30, 2021." ECF No. 22-1, Seidel Decl., Ex. A, at 3. Plaintiff further limited this, making clear that his request was limited to "the reason why FBI attempted an in person contact at my residence on 9/30/2021." ECF No. 22-1, p. 59. Unlike the *Jett* plaintiff's request that sought information on an investigation into multiple named individuals, Plaintiff's request was limited to the FBI's in-person visit to *his* home. Thus, even applying *Jett*, using the Plaintiff's name as the sole search term was reasonable. *See* ECF No. 22, Seidel Decl. at ¶¶ 27–330.

The FBI's search of the CRS automated indices, available within the Sentinel functions, also represented the most reasonable means for the FBI to locate records potentially responsive to Plaintiff's FOIPA request. *See* Seidel Decl., ECF No. 22, p. 11, ¶ 27; Second Seidel Decl. ¶ 4. In the Response, Plaintiff argues that the FBI's failure to search other databases including ELSUR, TSDB, Fog Reveal, and FIDs renders the FBI's search unreasonable. ECF No. 22, p. 11, ¶ 28. But this argument reflects a misunderstanding of the FBI's search.

Plaintiff's criticism of the FBI for not searching ELSUR is based on a misunderstanding of what the FBI searched. The prior automated ELSUR indices interfaced with ACS upon its implementation in 1995 and later consolidated with Sentinel. Second Seidel Decl. ¶ 6. Thus, the names of targeted subjects, as well as facilities and places surveilled since January 1, 1960, are also indexed within, and searchable by the Sentinel search function. *Id.* Given the nature of Plaintiff's request, if responsive records existed in ELSUR, they should have been located in the CRS and identified via the index search methodology. *Id.* ¶ 7. Therefore, any responsive records in the ELSUR indices would have been duplicative of the information available in the Sentinel indices and ACS indices available in Sentinel; thus, the search of the Sentinel indices and ACS indices available in Sentinel accomplished the task of locating any responsive records in the ELSUR indices. *Id.* Simply put, the search performed by the FBI would have been reasonably expected to locate any responsive records in ELSUR. Therefore, Plaintiff's criticism of the FBI for not running an independent search solely in ELSUR misses the mark.

Again, Plaintiff relies on *Jett* for the proposition that the FBI's failure to perform an independent search of ELSUR was unreasonable. Even if the FBI's Sentinel search did not search the ELSUR indices—it did—*Jett* still would not compel an independent search of ELSUR because it is distinguishable from the facts of this case. In *Jett*, the court found the FBI's failure to search

ELSUR to be because plaintiff's FOIA request specifically sought copies of tape recordings made by the plaintiff. *Jett*, 139 F.Supp.3d at 368. In *Jett*, there was no question that the tape recordings plaintiff requested existed because they were made by the plaintiff at the request of FBI. That is not the case here. Plaintiff has not identified any recordings; he merely speculates something *could* exist. But Plaintiff's speculation regarding the potential existence of additional documents does not render the FBI's search unreasonable. *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.D.C. 1991) ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them.").

Fog Reveal is a tracking tool that aggregates location data from mobile apps. Second Seidel. Decl. ¶ 8. This is a product of FOG Data Science, a privately owned and operated company. Plaintiff has not provided any indication the FBI owns or operates this database or that its records are agency records for purposes of the FOIA. *Id.* Therefore, the Plaintiff has failed to establish that the FBI could have or should have searched Fog Reveal to look for documents responsive to his request.

FIDS is a software application that was deployed throughout the FBI on November 15, 2024. *Id.* ¶ 9. This web-based software application allowed FBI personnel with access to the FBI's Intranet to create and disseminate standardized Intelligence Information Reports ("IIRs") quickly and efficiently. *Id.* As of September 14, 2014, FIDS workflows were moved into the FBI's central recordkeeping and case management system, Sentinel. *Id.* The FIDS database is not a record keeping database and is now obsolete. Therefore, it would not be reasonable to conduct a search of FIDS given that its workflows have been moved to Sentinel, which is accessed via the CRS search the FBI completed.

TSDB was replaced with the Terrorist Screening Dataset ("TSDS") in 2021 and is the United States' consolidated terrorism watchlist. *Id.* ¶ 10. When the FBI receives a FOIA or Privacy Act request for an individual, the FBI consistently neither confirms nor denies the existence of watchlist records. *Id.* This *Glomar* response is a standard response to requests to the FBI seeking records on an individual. Given the sensitive nature of the information and the national security and law enforcement harm regarding the TSDS, release of the information in any form poses too great a risk to national security. The FBI can neither confirm nor deny the existence of an unacknowledged individual's name on a watch list pursuant to FOIA Exemption 7(E) and, in instances where a requester seeks records on themselves, Privacy Act Exemption (j)(2). 5 U.S.C. § 552 (b)(7)(E) (2016), 5 U.S.C. § 552a (j)(2) (1974). *Id.* The FBI has previously provided the standard *Glomar* response to Plaintiff. Specifically, the FBI FOIPA Addendum to the FBI's September 28, 2023 release of records to Plaintiff provides:

> **Part 2: The standard responses below apply to all requests for records on individuals:**
>
> (i)   **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

ECF No 22-1, p. 87. Thus, the FBI has already addressed Plaintiff's request for information regarding TSDS. To the extent Plaintiff is requesting the FBI provide information regarding whether he appears in TSDS, the FBI has asserted and continues to assert a *Glomar* response. *Id.* ¶ 12.

Plaintiff's argument that the FBI's search was unreasonable because it did not interview Special Agent ("SA") Hightower is also unpersuasive. In support of this argument, Plaintiff relies on *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999). But that case does not

support Plaintiff's argument. In *Valencia-Lucena*, the plaintiff filed a FOIA request seeking a logbook of a Coast Guard cutter that seized containers of drugs dropped offshore from a plane he piloted. *Valencia-Lucena*, 180 F.3d at 323. The ship's captain, Lieutenant Nesel, brought the logbook to plaintiff's criminal trial and referred to pages of the logbook in testifying to the amount of drugs recovered, which then formed the basis of plaintiff's criminal sentence. *Id.* Following his resentencing, the plaintiff filed a FOIA request with the U.S. Coast Guard seeking copies of the logbook. *Id.* The U.S. Coast Guard was never able to locate the logbook and responded to Plaintiff's second FOIA request that it had no responsive documents. *Id.* at 325. On appeal, the D.C. Circuit found the U.S. Coast Guard's search for responsive records was inadequate. The court found that the U.S. Coast Guard's failure to contact Lieutenant Nesel, who had brought the logbook to the criminal trial, was unreasonable because "it was entirely possible that Lieutenant Nesel would recall what he did with the logbook after trial." *Id.* at 328. The court explained that the "undisputed connection between the missing logbook and Lieutenant Nesel should have led the Coast Guard to inquire of him as a source 'likely to turn up the information requested, regarding the missing logbook's whereabouts.'" *Id.* at 328 (internal citations omitted).

This case is distinguishable from *Valencina-Lucena*. In that case, there was an identifiable record that the agency failed to locate, and Lieutenant Nesel was the last person known to possess the document. Plaintiff contends that *Valencina-Lucena* required the FBI to ask SA Hightower about the existence of records. But the difference is that in this case, Plaintiff has not identified any missing record specifically traceable to SA Hightower. Unlike Lieutenant Nesel, there is no indication that Special Agent Hightower was the last person in possession of a particular document that the FBI has been unable to locate or produce. Plaintiff's mere speculation that there may be

additional records and the SA Hightower may have been able to help locate them does not render the FBI's search unreasonable. *SafeCard Servs.*, 926 F.2d at 1201.

## II.    **The FBI properly withheld information pursuant to FOIA exemptions.**

As explained in the Motion, the FBI properly withheld certain information pursuant to FOIA Exemptions 3, 6, 7(C), 7D), and 7(E). In the Response, Plaintiff challenges the FBI's withholdings on three grounds. Plaintiff contends the FBI's Vaughn Index was not adequate. ECF No. 25, ¶¶ 74–79. He contends the Seidel Declaration was not adequate. *Id.* ¶¶ 80–81. Finally, Plaintiff challenges the FBI's reliance on particular FOIA exemptions. *Id.* ¶¶ 88–101. None of Plaintiff's arguments are persuasive.

First, Defendant's *Vaughn* Index is sufficient. In *Vaughn v. Rosen*, the Court of Appeals for the District of Columbia required agencies to specify which portion of a document they are withholding and correlate the withheld document to a specific FOIA exemption as well as the agency's non-disclosure justification. 484 F.2d 820, 827 (D.C. Cir. 1973). There is not a set formula for a *Vaughn* Index. *Hinton v. DOJ*, 844 F.2d 126, 129 (3rd Cir. 1988). All that is required is that index provide sufficient information such that the court can determine why each document or portion of a document withheld is putatively exempt from disclosure. *Id.* Even "boilerplate language" is permissible in a *Vaughn* Index because it has never been suggested that an agency cannot use similar language to justify withholding information in multiple documents. *Broward Bulldog, Inc. v. DOJ*, 939 F.3d 1164, 1196 (11th Cir. 2019) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006) ("No rule of law precludes [an agency] from treating common documents commonly.")). Agency declarations meeting these standards are entitled to a presumption of good faith. *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Plaintiff argues that the *Vaughn* Index is insufficient because it does not contain all the information required by Federal Rule of Civil Procedure 26(b)(5)(a). ECF No. 25 ¶ 75. However, Plaintiff fails to provide any support that Rule 26 governs the content of a *Vaughn* Index. It does not. *See Hinton*, 844 F.2d at 129 ("There is no set formula for a *Vaughn* Index"). Plaintiff also contends that the *Vaughn* Index fails to show "how" the exemptions apply to the Defendant's FOIA production. Again, Plaintiff is wrong. The *Vaughn* Index, contained as Exhibit N to the First Seidel Declaration, describes all 179 pages of the production. It identifies which exemptions apply to each page. The exemptions are explained in the Exemption Application Index, ECF No. 22-1, p. 95, and more fully explained in the Seidel Declaration, ECF No. 22-1, ¶¶ 33–71. Viewed collectively, especially when viewed with a presumption of good faith, this more than satisfies the FBI's burden in producing a *Vaughn* Index.

Plaintiff's second argument is that the First Seidel Declaration is inadequate. Again, Plaintiff is incorrect. The First Seidel Declaration, when read in context with the included *Vaughn* Index, identifies, on a page-by-page basis, which exemptions were used to withhold information. Contrary to Plaintiff's suggestion, the First Seidel Declaration does explain how the exemptions apply to the documents. For instance, the First Seidel Declaration explains that with Exemption category 7(D) the FBI withheld confidential source information. ECF No. 22-1, p. 25, ¶¶ 53–54. Reading this in conjunction with the *Vaughn* Index, the Court can see that, for instance, Bates Number 160 was withheld pursuant to FOIA Exemption 7(D) because that page contained confidential source information and was withheld in full. ECF No. 22-1, p. 99. The First Seidel Declaration is sufficient to establish the FBI's right to summary judgment.

Plaintiff finally challenges the specific exemptions asserted by the FBI. None of Plaintiff's arguments are persuasive. First, Plaintiff argues that FOIA Exemptions 6 and 7(C) do not apply to

FBI Agents or local law enforcement officials because they do not have a privacy right in their names. ECF No. 25 at 38. Plaintiff apparently bases this on the Texas Public Information Act. However, Plaintiff does not provide any support for the position that the Texas Public Information Act supersedes the FOIA, which permits withholding of names and identifying information of law enforcement personnel. *See* 5 U.S.C. § 552(b)(6), (b)(7)(C); *Jett*, 139 F.Supp.3d 361 ("the court finds that the FBI's invocation of Exemption 7(C) [regarding third parties and law enforcement personnel] was proper."); *Am. Ass'n of Women, Inc. v. DOJ*, 167 F.Spp.3d 136, 143 (D.D.C. 2016) ("the Court is satisfied that the defendant has properly claimed [Exemptions 6 and 7(C)] from disclosure as the responsive records included personal information of FBI Special Agents and support personnel, third-parties of 'investigative interest,' non-FBI federal government personnel, third-parties merely mentioned,' state and local law enforcement personnel, and third-parties who provided information to the FBI.").

Second, Plaintiff challenges the FBI's invocation of Exemptions 3, 6, 7(C), 7(D), and 7(E). ECF No. 25, ¶¶ 93–98. Plaintiff's challenges to these sections are largely the same. In each instance, Plaintiff argues that Defendant failed to "provide any document-by-document statement of its exemptions, while also failing to establish that it conducted a required 'document-by-document review in order to assign documents to the proper category.'" *Id.* ¶¶ 93, 94, 96, 97. Plaintiff relies on *Huddleston v. FBI*, 4:20-cv-0044-ALM (E.D. Tex. Aug. 15, 2024) (Doc. 175) to support this proposition. But that decision is easily distinguishable. In *Huddleston*, the FBI sought to withhold two laptops in their entirety based on FOIA Exemption 7(A). The court found that the FBI was required to conduct a "document-by-document review of the documents within the Work Laptop and Personal Laptop in order to assign the documents the proper category." *Id.* at 5. Unlike *Huddleston*, in this case, the FBI conducted a document-by-document, and in fact

page-by-page, analysis of records responsive to Plaintiff's FOIA request and identified FOIA exemptions on a page-by-page basis. *See* ECF No. 22-1, p. 94–99 (*Vaughn* Index identifying exemptions on page-by-page basis). Thus, contrary to Plaintiff's argument, the FBI did conduct a document-by-document analysis assigning each page a FOIA Exemption where applicable.

Plaintiff also challenges the FBI's withholding of information pursuant to FOIA Exemptions 6 and 7(C) because the FBI does not specifically state the exemptions and fails to specify how they apply on a document-by-document basis. Again, Plaintiff is incorrect. In the First Seidel Declaration, the FBI explains the basis for the exemptions. Then, in the *Vaughn* Index, the FBI specifically identifies which pages are being withheld, in whole or in part, based on these exemptions.

Finally, Plaintiff challenges the FBI's withholding under Exemption 7(E) arguing that the FBI failed to provide some explanations of what procedures are involved and how they would be disclosed. ECF No. 25 at 41. Again, Plaintiff is mistaken. For each of the five categories of information withheld pursuant to FOIA Exemption 7(E), the FBI explained the type of information being withheld and what that information would disclose if produced. ECF No. 22-1, p. 28–35. Through the *Vaughn* Index and Seidel Declaration, the FBI has tied this back to specific documents. It has satisfied its obligations to invoke FOIA Exemption 7(E) in this case.

The FBI has properly withheld certain information responsive to Plaintiff's FOIPA request pursuant to FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E). The withholdings are supported by the Seidel Declarations and the *Vaughn* Index. Because the FBI has satisfied its burden with respect to these exemptions, the Court should grant summary judgment in its favor on the issue of withholdings pursuant to FOIA exemptions.

### III.    <u>The FBI complied with its segregability obligations by producing records in a manner designed to achieve the maximum disclosure of information to Plaintiff.</u>

The FBI has satisfied its segregability obligations under FOIA. As explained in the Motion, with respect to segregability, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). In the Response, Plaintiff does not identify any specific instances where the FBI failed to comply with its segregability obligations, instead relying on the same sorts of conclusory statements he has throughout the Response. For instance, Plaintiff argues "Defendant offers no case specific information to show it satisfied any segregation requirements." ECF No. 25, p. 42, ¶ 99. Not true. The Seidel Declarations and FBI's *Vaughn* Index support that it complied with its segregability requirements.

As explained in the First Seidel Declaration, the FBI identified a total of 179 responsive pages. ECF No. 22-1, p. 36, ¶ 74. It released one page in full, released 58 pages in part, and withheld 120 pages in full. *Id.* The *Vaughn* Index identifies these categories and establishes that the FBI did release documents with limited redactions despite the FOIA Exemptions applying to those documents. *See* ECF No. 22-1, p 94–99 (showing documents produced to Plaintiff that were Released in Part despite applicable FOIA Exemptions). The First Seidel Declaration also explains that the FBI conducted an analysis to determine whether the responsive records could be released in full, in part, or needed to be withheld in full. ECF No. 22-1, p. 36–37, ¶ 74. For pages that were released in part, the FBI determined that those pages contained a mixture of material that could be segregated for release and the material that was withheld because release of the withheld portions would trigger foreseeable harm to one or more of the interests protected by FOIA. *Id.* ¶ 74(b). Similarly, the FBI conducted an analysis of pages it ultimately withheld in full. With respect to those pages, the FBI determined that all information in the pages was either covered by a FOIA

exemption or determined that the information on those pages was so intertwined with exempt material that no information could reasonably be segregated for release. *Id.* ¶ 74(c); *see Thomas v. U.S. Dep't of Justice*, 260 F. App'x 677, 679 (5th Cir. 2007) ("Release of redacted records is not required if 'any disclosable information is so inextricably intertwined with the exempt, confidential information that producing it would require substantial agency resources and produce a document of little value.'") (quoting *FlightSafety Servs. Corp. v. Dep't of Labor*, 326 F.3d 607, 612 (5th Cir. 2003)). The efforts necessary to further segregate the intertwined material would necessitate use of a significant amount of the FBI's finite resources and ultimately would result in production of only disjointed words, phrases, or sentences that taken separately or together would have minimal or no informational value. ECF No. 22-1, p. 37, ¶ 74(c); *see Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261, n.55 (D.C. Cir. 1977) ("[A] court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentence which taken separately or together have minimal or no informational content."); *Thomas*, 260 F. App'x at 679.

In this case, the FBI complied with its segregability obligations. It did not withhold any reasonably segregable nonexempt portions of the documents. For these reasons, the Court should grant summary judgment in favor of the FBI on the issue of segregability.

## IV.    The Court should deny Plaintiff's request for discovery and his request to depose Special Agent Hightower.

The Court should deny Plaintiff's requests for discovery and to depose SA Hightower for multiple reasons. First, Plaintiff has not established that discovery is appropriate in this case. Second, SA Hightower did not direct the FBI's search for documents responsive to Plaintiff's request and would not be a proper deponent even if discovery were allowed. Finally, it is apparent

that Plaintiff seeks to depose SA Hightower for a reason inappropriate in a FOIA case, which provides an additional reason to deny the request.

Plaintiff has failed to demonstrate that discovery is appropriate in this case. Discovery is the exception, not the rule in FOIA cases. *See e.g.s. CareToLive v. FDA*, 631 F.3d 336, 345–46 (6th Cir. 2011) ("Claims under the [FOIA] are typically resolved without discovery on the basis of the agency's affidavits."); *Just v. IRS*, 798 F.Supp.2d 43, 37 (D.D.C. 2011) (Noting that "discovery is disfavored" in FOIA actions), *aff'd*, 485 F.App'x 439 (D.C. Cir. 2012); *Wheeler v. CIA*, 271 F.Supp.2d 132, 139 (D.D.C. 2003) ("Discovery is generally unavailable in FOIA actions."). Because discovery is not part of a FOIA case, the decision whether to allow discovery is left to the discretion of the district court judge. *Schiller v. I.N.S.*, 205 F.Supp.2d 648, 653 (W.D. Tex. 2002) (citing *Broaddrick v. Executive office of the President*, 139 F.Supp.2d 55, 63 (D.D.C. 2001)); *see also Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined."). Here, Plaintiff has not shown that the Court should deviate from the general approach of denying discovery. Plaintiff's mere disagreement with the FBI's declarations and *Vaughn* Index is not sufficient to require this Court to engage in the disfavored practice of ordering discovery in FOIA cases.

Additionally, even if discovery was appropriate, SA Hightower is not an appropriate deponent. SA Hightower did not direct the search for documents responsive to Plaintiff's FOIPA request. The response to requests for access to FBI records and information pursuant to FOIA is the Record/Information Dissemination Section (RIDS). ECF No. 22-1, p. 1–2, ¶¶ 1-2.  RIDS conducted the FBI's search, which was reasonably calculated to locate records responsive to Plaintiff's FOIPA Request. Thus, a deposition of SA Hightower does not make sense in this case.

Given the fact the search for documents responsive Plaintiff's Request was not directed by SA Hightower, his deposition would likely exceed the limited discovery available in FOIA cases. In the limited instances where courts order discovery, which do not apply in this case, discovery is generally limited to the scope of an agency's search, its indexing and classification procedures, and other factual matters. *See, e.g. Heily v. U.S. Dept. of Commerce*, 69 F. App's 171, 174 (4th Cir. 2003) "It is well established that discovery may be greatly restricted in FOIA cases. When the courts have permitted discovery in FOIA cases, it generally is limited to the scope of the agency's search and its indexing and classification procedures.") (internal citations omitted).

In this case, although Plaintiff claims he wants to depose SA Hightower, in part, to learn what documents were created and where they were stored, is apparent that Plaintiff's actual motive is not to test the adequacy of the FBI's search for documents or its indexing or classification procedures. Rather, Plaintiff wants to depose SA Hightower to get the only information he really wants, "the reason why the FBI attempted an in person contact at my residence on 9/30/2021." ECF No. 25 at 9 (quoting ECF No. 22-1, p. 59). Plaintiff has made this clear throughout these proceedings:

- Plaintiff simply asked why two FBI domestic terrorism agents visited his home. The FBI can answer this question. No FOIA exemption prohibits the FBI from telling Jeremy Ivanovskis "what [the FBI] is up to." ECF No. 25 at 3.

- The answer to this inquiry is clearly not within the records or the database that FBI said it searched. But Laird Hightower has the answer to this question. *Id.* at 20.

- Jeremy Ivanovskis asks why two FBI domestic terrorism agents visited his home. The best way to find this information nis to ask the FBI agents who visited his home. This was not done. *Id.* at 29.

- Defendant should be required to present Laird Hightower for deposition so he can explain … why he visited Plaintiff's home on September 30, 2021. *Id.* at 44.

But FOIA is not designed to answer questions regarding government action. FOIA merely provides access to agency records. See *Jud. Watch, Inc.*, 177 F. Supp. 3d at 456 (finding that "[a] question is not a request for records under FOIA and an agency has no duty to answer a question posed as a FOIA request."); *Espinoza v. Dep't. of Justice*, 20 F.Supp.3d 232, 245 (D.D.C. 2014) ("Plaintiff's dispute is based on the faulty premise that the FOIA obligates the government to answer questions apparently about any governmental action. The FOIA is not so sweeping but rather provides individuals "access to [agency] records 'written or transcribed to perpetuate knowledge or events.'") (quoting *Hudgins v. IRS*, 620 F.Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987), *cert denied*, 484 U.S. 803, 108 S.Ct. 47, 98 L.Ed. 2d 12 (1987) (citations omitted)); *Jean-Pierre v. BOP*, 880 F. Supp. 2d at 103 (concluding that request for objective pieces of information, such as "who gave the order" and "on what day," are not "cognizable under FOIA, because they ask questions calling for specific pieces of information rather than records"). The FOIA does not place an obligation on an agency to answer questions or to create documents or opinions in response to an individual's request. *Id.* (quoting *Hudgins*, 620 F.Supp. at 21); *Powell v. IRS*, 255 F.Supp.3d 33, 43 (D.D.C. 2017) ("Critically, though, FOIA only requires that an agency turn over <u>records</u>, not that it provide a requestor with specific information or answer questions.") (emphasis in original). Even if Plaintiff could establish that discovery is appropriate in this case—it is not—because it is apparent Plaintiff is not seeking to depose SA Hightower in furtherance of obtaining agency records, but to obtain answers to questions he has regarding the FBI's actions on September 30, 2021, the Plaintiff's request to depose SA Hightower should be denied.

V.      **Miscellaneous Issues**

Plaintiff tangentially raises multiple additional issues in the response. Although none is dispositive, the FBI will address those issues below.

### a. *Jett's* and *CREW's* discussion of "weighty public interest" are irrelevant in this case, which does not involve a public corruption investigation or categorical withholding of documents.

Plaintiff argues this case involves a "weighty" public interest that should weigh in favor of public disclosure of the records Plaintiff seeks. In support of this proposition, Plaintiff relies on *Jett v. FBI*, 139 F.Supp.3d 352 (D.D.C. 2015). However, Plaintiff reads *Jett* too broadly. In *Jett*, the court considered whether FBI could categorically refuse to use search terms including the names of his political opponent, intermediaries involved in a scheme to get plaintiff to drop out of the race in exchange for offers of future employment, and a high-ranking member of the House of Representatives because plaintiff did not provide FBI with Privacy Act waivers for those individuals. *Jett*, 139 F.Supp.3d at 365. The court found that the FBI's blanket refusal was unreasonable. *Id.* at 366. The court based its decision in large part on *Citizens for Responsibility & Ethics in Wash. (CREW) v. DOJ*, 746 F.3d 1082, 1092 (D.C. Cir. 2014). The court found that "*CREW* teaches that, at least with respect to records of a public corruption investigation, the public-private interest balance ordinarily will *not* tip in favor of non-disclosure." *Jett*, 193 F.Supp.3d at 366. *CREW* held that it was improper for DOJ to categorically withhold all documents relating to a public corruption investigation because there was a "weighty" public interest in shining a light on the FBI's investigation of major political corruption and the DOJ's ultimate decision not to prosecute a prominent member of the Congress for any involvement he may have had." *Id.* (citing *CREW*, 746 F.3d at 1092–95).

Plaintiff fails to show the analysis in *Jett* applies in this case. As Plaintiff acknowledges, at the time of the September 30, 2021 visit to his home, he had not even filed papers to run for United States Congress. Thus, unlike *Jett* and *CREW*, this case does not involve any sort of "major political corruption" or the DOJ's charging decisions regarding members of Congress. *See Jett*, 139 F.Supp.3d at 366. Plaintiff does not offer any information to the contrary. Even Plaintiff argues that SA Hightower is a "domestic terrorism agent." *See* ECF No. 25, p. 5–6, ¶ 19. Thus, Plaintiff has not established the basis for the *Jett* and *CREW* courts' decision regarding categorical withholding—the existence of a public corruption investigation—is not implicated and those decisions are not relevant.

**b.  _Loper Bright_ is irrelevant to this case, which does not implicate the Administrative Procedure Act or _Chevron_ Deference.**

Plaintiff includes a section of his brief addressing the United States Supreme Court decision in *Loper Bright Enterprises v. Rainmondo*, 620 U.S. __, 144 S.Ct. 224, No. 22-451 (June 28, 2024) to argue that the FBI's determinations are not entitled to deference because *Chevron* has been overruled. ECF No. 25, p. 14–15, ¶¶ 35–37. However, *Loper Bright* is irrelevant in this case.

In *Loper Bright*, the Supreme Court overruled its decision in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which held that silence or ambiguity in a statute should be regarded as an implicit delegation of authority to an agency. But *Loper Bright* reaffirmed that, "[w]hen the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court" it "to independently interpret the statute and effectuate the will of Congress to constitutional limits." 144 S.Ct. at 2263. The Court recognized, Congress "often" enacts statutes that contain such express delegations of discretionary rulemaking authority, *id.*, including where, for instance, it "empower[s] an agency to prescribe rules to 'fill up the details' of a statutory scheme," *id.* (quoting *Wayman v. Southard*, 10- Wheat. 1, 43 (1825)). The Court

Reply In Support of Motion for Summary Judgment                                                    21

reaffirmed that when the agency rule promulgated pursuant to such authority is challenged under the APA, courts "stay out of discretionary policymaking"; the reviewing court's role is "to independently identify and respect such delegations of authority, police the outer boundaries of those delegations, and ensure the agencies exercise their discretion consistent with the APA." *Id.* at 2268.

It is clear that *Loper Bright* does not affect this case. The FBI's response to Plaintiff's FOIA request does not involve agency rulemaking that was addressed in either *Loper Bright* or *Chevron*. Moreover, the FBI has not invoked *Chevron* deference in this case. The closest thing to deference involved in this case is the well-established case law that agency affidavits are afforded a presumption of good faith. *See, e.g. Defenders of Wildlife v. U.S. Dep't of Justice*, 314 F.Supp.2d 1, 8 (D.D.C. 2004) (quoting *TransUnion, LLC v. FTC*, 141 F.Supp.2d 62, 54 (D.D.C. 2001)). *Loper Bright* does not affect this presumption of good faith and has no bearing on the issues before the Court.

## <u>CONCLUSION</u>

Defendant has presented two declarations, a *Vaughn* index, and legal authority sufficient to logically and plausibly support its invocation of the challenged exemptions and which satisfy its FOIA and summary judgment burdens. For the reasons stated above and attached and those in its Motion and the First Seidel Declaration, Defendant respectfully requests that this Honorable Court grant summary judgment in its favor and deny Plaintiff's cross-motion for summary judgment.

Respectfully submitted,

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

*/s/ James Gillingham*

JAMES GILLINGHAM
Assistant United States Attorney
Texas Bar No. 24065295
110 N. College Ave.; Suite 700
Tyler, Texas 75702
Tel:  (903) 590-1400
Fax: (903) 590-1436
Email:  James.Gillingham@usdoj.gov

**ATTORNEYS FOR DEFEDNANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 9, 2024, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to all counsel of record via the court's electronic filing system.

<u>/s/ James Gillingham</u>
JAMES GILLINGHAM
Assistant United States Attorney